IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:24-CR-79-FL

UNITED STATES OF AMERICA

v.

DAVID HUGH MACINTOSH,

Defendant.

MEMORANDUM AND
RECOMMENDATION

This matter comes before the court on Defendant David Hugh MacIntosh's ("MacIntosh") motion to suppress. [DE-39]. The Government filed a response, asserting that it will not offer the evidence Defendant seeks to suppress at trial. [DE-46]. For the following reasons, it is recommended that the motion to suppress be denied as moot.

## I.    Procedural Background

On November 26, 2024, a Grand Jury sitting in the Eastern District of North Carolina returned an eleven-count indictment charging MacIntosh with ten-counts of knowingly receiving digital child sexual abuse material (CSAM), in violation of 18 U.S.C. § 2252(a)(2) and (b), and one-count of knowingly possessing CSAM in violation of 18 U.S.C. § 2252(a)(4)(B). [DE-1]. An arrest warrant was issued and returned executed on December 10, 2024, and MacIntosh was detained pending trial, [DE-4, -9, -22]; the court granted MacIntosh's motion for a competency hearing, [DE-27 and -28], which, along with the arraignment, is set for the court's May 2026 term, [DE-45]; and counsel filed the instant motion to suppress on January 9, 2026, [DE-39]. The Government responded on February 6, 2026. [DE-46].

The suppression motion argues MacIntosh's Fifth Amendment rights were violated when he was subjected to questioning while in custody without being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). MacIntosh moves to suppress all post-arrest statements.

## II.    Factual Background

The facts of the instant case, according to MacIntosh, are as follows. On May 12, 2023, the Craven County Sheriff's Department executed a search warrant for MacIntosh's home. Def.'s Mot. [DE-39] at 2. MacIntosh was then handcuffed, placed in a patrol car, and transported to a formal interview room at the Craven County Sheriff's Office. *Id.* at 3. Investigator A.E. Salter ("Salter") was the first law enforcement officer to speak with MacIntosh, asking for the passcode to MacIntosh's cellphone, and indicating that law enforcement would eventually access the contents of the cellphone, whether MacIntosh cooperated by entering his passcode or not, and that cooperating could win him favor with the magistrate. *Id.*

Salter went over the search warrant and accusations made against MacIntosh, then left when Sgt. Smith entered. *Id.* Salter never mirandized Macintosh. *Id.* MacIntosh asked Sgt. Smith questions and explained that he had never been through anything like this. *Id.* Sgt. Smith explained to MacIntosh that he just wanted to talk, get his side of the story, and indicated MacIntosh was already detained, considering he was transported to the Sheriff's Office and placed in an interview room. *Id.* at 4. At some point MacIntosh states "I need an attorney here possibly," which officers disregarded. *Id.* MacIntosh continues to tell his side of the story, with officers asking him clarifying questions. *Id.* Officers continue to question MacIntosh without MacIntosh waiving his rights or being mirandized for over two hours. *Id.* at 6.

2

## III. Discussion

MacIntosh asserts that officers violated his Fifth Amendment rights by detaining and questioning him before issuing his *Miranda* warnings. The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. To protect this right, the Supreme Court adopted in *Miranda*, 384 U.S. 436, several procedural rules governing custodial interrogations. *Id.* at 479. Prior to any questioning, a defendant must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him . . . ." *Id.* Any statement elicited from a defendant in violation of these procedural rules is inadmissible in the prosecution's case-in-chief. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). Further, once an individual has invoked his *Miranda* right to counsel, he cannot be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

In response to the suppression motion, the Government represented that it does not intend to offer the statements at issue at trial. [DE-46]. The remedy for a Miranda violation is that the Government may not use evidence obtained as a result of the interrogation at trial. *Miranda*, 384 U.S. at 479. Accordingly, the court recommends denying the suppression motion as moot. *See United States v. Jaimes-Cruz*, No. 7:08-CR-139-FL-3, [DE-126] (E.D.N.C. May 13, 2009) (denying as moot motion to suppress in light of the government's representation that it did not intend to offer the evidence at issue).

3

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that Defendant's motion to suppress [DE-39] be DENIED AS MOOT.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 12, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. See, e.g., 28 U.S.C. § 636(b)(1). Any response to objections shall be filed by within 14 days of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 26th day of February, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

4